UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| CARLO LIZZA & SONS PAVING, INC., | **MEMORANDUM AND ORDER** |
| Plaintiff, | 05-CV-5047 (DRH)(WDW) |
| -v.- | |
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | |
| Defendant. | |

_____

**Appearances:**

**For the Plaintiff:**
PINKS, ARBEIT & NEMETH
140 Fell Court, Suite 303
Hauppauge, New York 11788
By: Steven G. Pinks, Esq.

**For the Defendant:**
SILLS CUMMIS EPSTEIN & GROSS P.C.
30 Rockefeller Plaza
New York, New York 10112
By: Michael T. Hager, Esq.

**HURLEY, District Judge:**

Plaintiff Carlo Lizza & Sons Paving, Inc. ("Plaintiff"), a paving contractor, brings this action for breach of contract against defendant International Fidelity Insurance Company ("Defendant") seeking payment for work it allegedly was unable to complete under the contract due to Defendant's breach. Defendant moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), or alternatively, for summary judgment, pursuant to Rule 56. For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1

Statements, are undisputed unless otherwise noted.

## I. *The Construction Project*

In April 1997, the County of Nassau ("Nassau County") entered into a contract (the "Contract") with Roman Roads Construction Corp. ("Roman") for the improvement of Rockaway Turnpike and the installation and updating of a sewage treatment plant in Inwood, New York (the "Construction Project"). Defendant was the surety for the Construction Project. As surety, Defendant executed and delivered a performance bond guaranteeing performance of the Contract by Roman.

In September 1997, Nassau County declared Roman in default under the Contract. Upon Roman's default, Defendant became responsible for performing the work required by the Contract.

Defendant maintains that it entered into an agreement with Roman for completion of the Construction Project (the "Completion Agreement"), pursuant to which Roman agreed to perform and complete all of the work required under the Contract, as the "Completion Contractor." Defendant also submits that in furtherance of the Completion Agreement, Roman entered into a subcontract with Plaintiff (the "Subcontract"), pursuant to which Plaintiff agreed to remove and replace asphalt paving at the Construction Project on a "time and material basis." (Def.'s Rule 56.1 Stmt. ¶ 8.) The Subcontract consists of a one-page "PROPOSAL," submitted to Roman from Plaintiff, and is dated October 23, 1998. (*See* Aff. of Francis Whelan, dated Dec. 12, 2005 ("Whelan Aff."), Ex. F.) It is signed at the bottom under the terms "ACCEPTANCE OF PROPOSAL" by the President of Roman. (*Id.*) The proposal states that Plaintiff will excavate and replace the "base asphalt" at a price of $116.00 per ton. (*Id.*)

Plaintiff maintains that although the proposal was submitted to Roman, Roman's limited role was as agent for Defendant and it was actually Defendant which hired Plaintiff to complete the paving portion of the Construction Project. In this regard, Plaintiff alleges that once Roman defaulted under the original Contract, Defendant became "the general contractor on the job and was in full control of the Construction Project, pursuant to the [performance] bond." (Pl.'s Response to Def.'s Rule 56.1 Stmt. ¶ 21.) Plaintiff further contends that once it began working, it issued its invoices directly to Defendant. Copies of Plaintiff's invoices indicating that they were submitted to Defendant are attached as exhibits.

Defendant maintains that the Subcontract was between Roman and Plaintiff and that it was never in privity with Plaintiff. It disputes the relevancy of the invoices by explaining that, under the Completion Agreement, Roman reviewed and approved all invoices submitted by subcontractors and, in turn, referred requisitions for payment to Nassau County. Because Nassau County was allegedly not issuing payments in a timely fashion, Defendant "fund[ed] a trust account set up pursuant to the Completion Agreement" whereby "[a]ll payees, including [Plaintiff], would be paid with checks drawn on the trust account by the account trustee, [Lovett Silverman Construction Consultants Inc. ("Lovett Silverman")]." (Whelan Aff. ¶ 13.) Months later, Defendant would be reimbursed by Nassau County. (*Id.*) Defendant submits copies of two checks made to Plaintiff, drawn on Lovett Silverman's account. (*Id.* Ex. E.)

## II.    *The Alleged Breach of the Subcontract*

The parties agree that pursuant to the Subcontract, Plaintiff's paving obligations were originally to be performed on a night schedule. Thereafter, however, Nassau County demanded that the paving work be done during the day. Accordingly, on or about November 25,

3

1998, Plaintiff began performing its paving work on a daytime schedule. Plaintiff contends that as a result of this new schedule, it was forced to change the location of its asphalt supplier which significantly increased its costs and caused it to "incur a delay in the performance of the Subcontract." (Pl.'s Response to Def.'s Rule 56.1 Stmt. ¶ 29.)

On March 13, 2000, Plaintiff sent a letter to Defendant outlining a "break-down for what [Plaintiff] lost due to the contractor work being switched from night-time work to day-time work." (Whelan Aff., Ex. H.) The letter indicates that the change in schedule caused Plaintiff to lose a total of 3,047.52 tons of asphalt at a contract price of $116.00 per ton, totaling $353,512.32. (*Id.*) The letter concludes by stating that Plaintiff "is now submitting this loss of productivity claim in the amount of $353,512.32 for your review." (*Id.*) On March 24, 2000, Defendant requested that Plaintiff complete a Proof of Claim form as part of its investigation of Plaintiff's claim. (*Id.* Ex. I.) Defendant's request was made "without prejudice to the rights of [Defendant] and [indicated that it] shall not constitute a waiver or release of any of its rights, defenses, claims or setoffs." (*Id.*) Plaintiff thereafter submitted its Proof of Claim and Defendant responded that the claim was under review.

### III. *The Instant Action*

In September 2005, Plaintiff commenced this litigation in Supreme Court, Nassau County. On October 29, 2005, Defendant removed the action to this Court. The "AMENDED VERIFIED COMPLAINT" sets forth three causes of action: (1) breach of the Subcontract based upon the change in the work schedule; (2) breach of the Subcontract based upon Defendant's non-payment for goods supplied and work performed; and (3) recovery for an "account stated."

By letter dated November 4, 2005, Defendant requested permission to move to

4

dismiss the Complaint pursuant to Rule 12(b)(6). Plaintiff opposed the application. On November 14, 2005, the Court granted Defendant permission to make its motion and issued a briefing schedule. Although Defendant's November 4th letter did not reference Rule 56, and despite the fact that there has been no discovery in this case, Defendant now moves to dismiss the Complaint pursuant to Rule 12(b)(6) *and* for summary judgment pursuant to Rule 56. For the reasons discussed below, Defendant's motion is denied.

## DISCUSSION

### I.  *Summary Judgment Standard*

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law. *See Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, that no rational jury could find in the non-movant's favor. *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth

specific facts that show that there *is* a genuine issue of material fact to be tried. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted).

## II.     *Defendants' Arguments*

Defendant contends that this case should be dismissed for the following reasons: (1) there was never a contract between the parties; (2) Plaintiff's claims are barred by the statute of limitations; and (3) the evidence does not support a claim for an account stated. The Court will address Defendant's arguments in turn.

### A.     *Whether There Was a Contract Between Plaintiff and Defendant*

Under New York law, a second-tier subcontractor may recover from a general contractor, even when a separate contract exists between the second-tier subcontractor and the subcontractor, if the general contractor has agreed to pay the second-tier subcontractor's debt or "if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay." *See U.S. East Telecomms., Inc. v. US West Comm'ns Servs., Inc.*, 38 F.3d 1289, 1298 (2d Cir. 1994); *see also EFCO Corp. v. U.W. Marx, Inc.* 124 F.3d 394, 400-01 (2d Cir. 1997). In order to determine whether such quasi-contractual liability exists, "courts must

6

inquire 'whether the [general contractor] acted in such a way as to incur obligations to the subcontractor outside the contractual structure.'" *EFCO Corp.*, 124 F.3d at 401 (quoting *U.S. East*, 38 F.3d at 1297).

Here, on its face, the Subcontract is between Plaintiff and Roman. Notwithstanding this fact, Plaintiff argues that Defendant was the true party to the contract. In support of this claim, Plaintiff proffers the affidavit of its President wherein he indicates that Roman's "limited role was as agent and representative for [Defendant] which was solely responsible for the completion of the Construction Project" (Aff. of Elia Aly Lizza, dated Jan. 12, 2006 ("Lizza Aff."), ¶ 13) and that he presented the proposal to Roman as Defendant's agent. (*Id.* ¶ 17.) Plaintiff also attaches a copy of a surety bond Plaintiff obtained, listing Seaboard Surety Company as surety and Defendant as the obligee, which specifically identifies the Construction Project and references the Subcontract as between Plaintiff and Defendant. (Lizza Aff., Ex. D.) Plaintiff argues that this surety bond "unambiguously evidences that a contract existed between [Defendant] as Obligee and Lizza as Principal. (Pl.'s Mem. at 4.)

In the Court's view, these statements are essentially conclusory in nature, as distinct from assertions of fact which may raise a triable issue for a jury. Nonetheless, there are facts in the record which tend to support these conclusions. For instance, there is evidence indicating that Plaintiff submitted its invoices directly to Defendant, which paid Plaintiff from its escrow account through its agent Lovett Silverman. Moreover, it is indisputable that Defendant, and not Roman, requested that Plaintiff complete a Proof of Claim form as part of its investigation into Plaintiff's lost productivity claim. The Court therefore finds that the evidence, particularly that recounted above, demonstrates that there are genuine issues of material fact

7

regarding whether Defendant impliedly obligated itself to pay Plaintiff for its work. Accordingly, to the extent Defendant moves for summary judgment on the ground that there is no privity between the parties, its motion is denied.[1]

### B. Whether Plaintiff's Breach of Contract Claim is Barred by the Statute of Limitations

Plaintiff alleges that as a result of Defendant's change in the work schedule from nighttime to daytime, Plaintiff was forced to change the location of its asphalt supplier, which significantly increased its costs and caused it to incur a delay in the performance of the Subcontract. On March 13, 2000, Plaintiff sent Defendant a letter, asserting a "loss of productivity" claim for $353, 512.32, based on the damages it allegedly incurred due to this change. Attached to the letter is a chart detailing the differences between the average amount of asphalt removed and replaced by Plaintiff during the nighttime compared to the actual amounts of asphalt removed and replaced by Plaintiff during the day, beginning on November 25, 1998. (Whelan Aff., Ex. H.) Plaintiff sought reimbursement for the difference between the two amounts, i.e., the difference between what it actually performed under the Subcontract and what it could have performed had it been able to work on a night schedule. Plaintiff's first cause of action for breach of contract, which seeks damages in the amount of $353, 512.32, is based on this claim.

The statute of limitations for breach of contract actions in New York is six years. N.Y. C.P.L.R. 231(2). The claim accrues when the contract is breached. *See Raine v. RKO*

---

[1] Defendant's conclusory assertion that "there are no circumstances surrounding the parties' dealings that give rise to an obligation for [Defendant] to pay [Plaintiff]" (Def.'s Mem. at 12), absent any citation to the record, is clearly insufficient to warrant the granting of judgment as a matter of law on this issue.

*General, Inc.*, 138 F.3d 90, 93 (2d Cir. 1998) (citation omitted); *Ely-Cruikshank Co. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

Defendant argues that the alleged breach of contract occurred, and the cause of action accrued, when Plaintiff was informed of the change in schedule, which indisputably occurred on November 25, 1998. Because Plaintiff initiated this action in September 2005, if Defendant is correct, Plaintiff's breach of contract claims would be time barred.

Plaintiff raises two arguments as to why its claim is not time-barred. First, it contends that Defendant's partial payments on this claim tolled the limitations period. Second, it asserts that the accrual date for a quantum meruit cause of action based on an implied or quasi-contract, as opposed to a claim for breach of contract, does not begin to run until the work has been completed. The Court will discuss Plaintiff's contentions separately.

### 1. *Partial Payments*

Plaintiff argues that the statute of limitations is tolled based upon Defendant's partial payments on the outstanding balance due Plaintiff under the Subcontract. Partial payment of a debt serves to toll the statute of limitations on that debt, on the theory that partial payment is tantamount to a voluntary acknowledgment of the existence of the debt. *See Daewoo Int'l (America) Corp. Creditor Trust v. SSTS*, No. 02 Civ. 9629, 2004 WL 830079, at *5 (S.D.N.Y. Apr. 13, 2004) (citations omitted). "In order that a part payment shall have the effect of tolling a time-limitation period, under the statute or pursuant to contract, it must be shown that there was a payment of a portion of an admitted debt, made and accepted as such, accompanied by circumstances amounting to an absolute and unqualified acknowledgment by the debtor of more being due, from which a promise may be inferred to pay the remainder." *Lew Morris Demolition*

*Co. v. Board of Educ.*, 40 N.Y.2d 516, 521 (1976) (citations omitted).

In support of its argument that Defendant made partial payments to Plaintiff which tolled the limitations period, Plaintiff proffers copies of invoices it submitted to Defendant for work performed under the Subcontract from December 1998 to April 1999. Plaintiff argues that because Defendant "never disputed the invoices or its indebtedness to" Plaintiff, "the inference is that [Defendant] would continue to make payments for the debt." (Pl.'s Mem. at 10.) Specifically, Plaintiff relies on two checks it received from Lovett Silverman, dated December 9, 1999, and January 13, 2000, for $60,000 each.[2] Plaintiff contends that because these payments were made months after Plaintiff finished its work under the Subcontract, they must have been partial payments on Plaintiff's lost productivity claim, as opposed to payment for work Plaintiff performed under the Subcontract. (*See* Lizza Aff. ¶ 39 ("[Defendant] continued to make partial payments well after the last invoices were sent.").)

Defendant maintains that these checks were simply payments for work performed under the Subcontract and, as such, they in no way represented an acknowledgment on Defendant's behalf of any obligation to pay Plaintiff on its lost productivity claim. (Def.'s Mem. at 14.) Based on the current record, the Court agrees.

Plaintiff argues that it was entitled to infer that because Defendant was paying Plaintiff on its invoices, which indisputably were for work Plaintiff actually performed under the Subcontract, that Defendant would similarly pay Plaintiff on its lost productivity claim.[3]

---

[2] The $60,000 amount does not correspond to any amount billed in the invoices.

[3] It is unclear from the materials submitted whether Plaintiff's lost productivity claim reflects damages arising out of the increased costs Plaintiff incurred in performing under the subcontract or damages for work Plaintiff was unable to complete under the subcontract. Either

Plaintiff's argument mixes apples and oranges. There is nothing in the record to link Defendant's payments for work *actually performed under the Subcontract* to payments on Plaintiff's lost productivity claim. As such, the fact that Defendant paid Plaintiff for work it performed pursuant to the terms of the Subcontract has no bearing on whether Defendant would pay Plaintiff for work Plaintiff was either unable to complete or did complete at increased costs. In this regard, Plaintiff does not claim that it had any kind of agreement with Defendant, implied or otherwise, whereby Defendant agreed to pay for such a claim.

Moreover, Plaintiff's conclusory statement that Defendant's last two payments must have been partial payment on its lost productivity claim because they were sent months after Plaintiff completed its work under the Subcontract is insufficient to give rise to a genuine issue of material fact. In fact, Plaintiff's argument is belied by the undisputable sequence of events. Plaintiff submitted nine invoices to Defendant totaling approximately 1.5 million dollars *for work performed under the Subcontract* from December 1998 to April 1999. Plaintiff alleges that the amount currently due and owing on these invoices is $40,558.90. Defendant's last two payments to Plaintiff were dated December 9, 1999, and January 13, 2000, respectively. Then, *two months later* – on March 13, 2000 – Plaintiff submitted its lost productivity claim. In response, Defendant indicated that it would review Plaintiff's claim. Thus, the evidence establishes that: (1) Plaintiff never applied any payments it received to its lost productivity claim; and (2) Defendant never acknowledged that it was obligated to pay Plaintiff thereon. Although the Court recognizes that Plaintiff has not had an opportunity to engage in discovery, Plaintiff has failed to set forth specifically what, if any, further evidence it seeks and how such

---

way, as discussed *infra*, the result is the same.

evidence would be relevant to its claims.

In sum, the Court finds that Plaintiff has not proffered any evidence sufficient to raise a genuine issue of material fact that any of Defendant's payments were made and accepted under circumstances evincing an acknowledgment on Defendant's behalf that it owed Plaintiff on its lost productivity claim. Accordingly, to the extent Plaintiff argues that Defendant's partial payments tolled the limitations period, its argument is rejected as a matter of law.

### 2. *The Limitations Period on a Claim in Quasi-Contract*

Plaintiff also argues that to the extent Defendant is found liable under an implied contract for the reasonable value of Plaintiff's services, "the limitation [period] on a claim for quantum meruit does not begin to run until the work has been completed." (Pl.'s Mem. at 9 (citing *GSGSB v. New York Yankees*, 862 F. Supp. 1160, 1171 (S.D.N.Y. 1993) and *Martin v. Camp*, 219 N.Y. 170 (1916).) Because the last material provided for and paid by Plaintiff allegedly occurred on October 9, 1999, Plaintiff argues that its claim is timely.

Defendant counters that "[r]egardless of the accrual date for a quantum meruit cause of action, '[t]he existence of a valid an[d] enforceable written contract governing a particular subject ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.'" (Def.s' Reply Mem. at 3 (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 288 (1987).) Thus, Defendant argues, because there is an express contract covering the subject matter at issue, viz. the signed proposal between Plaintiff and Roman, a contract cannot be implied in fact. Defendant is mistaken.

As noted above, the Second Circuit has explicitly held that a second-tier contractor may recover from a general contractor under an implied contract, even if a separate

12

contract exists between the second-tier contractor and the subcontractor, because "[a] party, whether or not it is in a contractual relationship with another, may incur quasi-contractual obligations to a third party with whom it has not contracted, by virtue of its direct representations to that party." *See U.S. East*, 38 F.3d at 1298. In so holding, the Second Circuit expressly noted that "[t]he principle of *Clark-Fitzpatrick*, while broad, is subject to exceptions." *Id.* Accordingly, Defendant's argument that it cannot be liable to Plaintiff in quasi-contract is without merit. Because the Court has already found that there are questions of fact regarding the viability of this claim, Defendant's motion to dismiss Plaintiff's breach of contract claim on statute of limitations grounds, which does not take into account the possibility that Plaintiff may recover in quasi-contract, is denied.[4]

### C. *Account Stated*

Plaintiff's third cause of action alleges that "on or about July 17, 2000, [P]laintiff rendered an account to . . . [D]efendant in the sum of $394,071.22" and that "Defendant has not disputed the account but nevertheless, has refused and failed to pay it." (Am. Compl. ¶ 15-16.) Plaintiff claims that "by virtue of the foregoing, [D]efendant is indebted to . . . [P]laintiff in the sum of $394,071.22 plus interest from July 17, 2000." (*Id.* ¶ 17.)

To recover under a theory of an "account stated," a plaintiff must demonstrate "an agreement between the parties to an account based upon prior transactions between them." *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham*, 185 F.3d 61, 64 (2d Cir. 1999) (citation and internal quotation marks omitted). "Such an agreement may be implied if a party receiving

---

[4] Because Defendant's argument assumed the inapplicability of liability under quasi-contract, Defendant failed to address the time at which such claims accrue, instead focusing on the accrual date for breach of contract claims only. Accordingly, the Court declines to analyze whether Plaintiff's claims for quasi-contract are timely.

a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment." *Id.* (citation and internal quotation marks omitted); *see also Conocophillips v. 261 East Merrick Road Corp.*, 428 F. Supp. 2d 111, 126 (E.D.N.Y. 2006) (explaining that plaintiff must show that (1) defendant received invoices from plaintiff, and (2) defendant failed to object within reasonable time or defendant made partial payment on account).

As an initial matter, the Court notes that although not raised by the parties, Plaintiff's claim for an account stated in the amount of $394,071.22 is comprised of two components: (1) $40,558.90 owed to Plaintiff for work actually performed under the Subcontract, based on the invoices Plaintiff submitted to Defendant; and (2) $353,512.13 based on Plaintiff's lost productivity claim. With regard to the former, viz. Plaintiff's claim for work performed under the Subcontract, Defendant's motion to dismiss Plaintiff's account stated claim is denied as there is certainly evidence in the record from which a reasonable trier of fact could infer that (1) Defendant received invoices from Plaintiff, and (2) Defendant failed to object within a reasonable time and made partial payments thereon.

With respect to Plaintiff's lost productivity claim, it is undisputable that Plaintiff did not send Defendant an invoice; rather, it "submitted" its claim for Defendant's "review" pursuant to the March 13, 2000 letter. (Whelan Aff., Ex. H.) Moreover, the Court has already rejected Plaintiff's assertion that it received partial payment on this claim. Nonetheless, given that there is no evidence in the record indicating that Defendant ever objected to this claim upon receipt of Plaintiff's March 13, 2000 letter, a reasonable trier of fact could infer that Defendant impliedly agreed to pay it. Although Defendant did reserve its rights to contest this claim in its

March 24, 2000 and July 26, 2000 letters, there is no evidence to suggest that it actually ever did so. Thus, an argument could be made that by taking no further action on Plaintiff's claim, Defendant impliedly agreed to pay it. Whether this argument is sound is problematic; nonetheless, given the absence of discovery, the Court declines to grant Defendant's motion to dismiss Plaintiff's third cause of action at this juncture.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss, or alternatively, for summary judgment, is DENIED without prejudice to renew at the conclusion of discovery.

**SO ORDERED**

Dated: Central Islip, NY
September 29, 2006

/s_____
Denis R. Hurley,
United States District Judge